## WOOLF v. HAMBURGER et al.

(Supreme Court, Appellate Division, First Department. January 8, 1909.)

SALES (§ 343*)—CANCELLATION OF CONTRACT—RIGHTS OF SELLER—RECOVERY OF PRICE.

> Where one who contracted to buy clothing canceled the order before it was manufactured because plaintiff failed to send samples as agreed, the seller could not complete the manufacture and recover the full contract price, though he might be entitled to recover the damages for breach of the contract; he being bound to reduce his damage as far as possible.

> [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 947–955; Dec. Dig. § 343.*]

Appeal from Trial Term, New York County.

Action by Nathan L. Woolf against Isaac Hamburger and others. From a judgment for plaintiff, and from an order refusing a new trial, defendants appeal. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, McLAUGHLIN, CLARKE, and HOUGHTON, JJ.

Howard S. Gans, for appellants.
Manuel J. Myers, for respondent.

INGRAHAM, J. The plaintiff made a contract with the defendants to manufacture 197 men's suits of clothing of specified sizes and styles, to be made of a material known as "all wool black Thibet," at $6.50 a suit. This contract is dated May 3, 1905, and was signed by the defendants. The complaint alleges that the plaintiff, at the request, instance, and order of the defendants, manufactured, promised, and agreed to pay the sum of $1,235; that the plaintiff manufactured the said goods pursuant to and in compliance with the said order, and offered to deliver the same to the defendants, who wrongfully refused to accept the same, and returned them to the plaintiff, who now holds said goods for the defendants, and has recovered the full contract price for a complete performance of the contract. The defendants' answer admits that on or about the 2d of May, 1905, they entered into a contract with the plaintiff whereby it was agreed that the plaintiff should manufacture for the defendants certain clothing of the kind and character set forth in the answer, for which the defendants agreed to pay the sum of $1,235, and alleges as a defense and by way of counterclaim that it was made a condition of the said contract that the plaintiff should send to the defendants sample swatches or pieces of the fabric, of which it was agreed as aforesaid that the garments should be made within a week after May 3, 1905; that the plaintiff would send a suit made of the said fabric as a sample of the style and fabric of the goods within a short time thereafter, and that the goods when manufactured by the plaintiff would be held by the plaintiff for delivery as required by the defendants from and after the 1st of September, 1905; that the plaintiff failed and neglected to manufacture for the defendants garments of the workmanship, character, sizes, and made with the materials agreed upon as aforesaid, and has failed to send sample swatches or a sample suit; that on the 28th of August, 1905, plaintiff tendered to the defendants certain goods purporting to be a delivery under said contract, but that said suits were not made in a good workmanship manner, and not made of fabric which was all wool; that the defendants have sustained damages by reason of plaintiff's failure to perform his contract in the sum of $247, for which they demand judgment.

The contract was dated May 3, 1905. Upon the trial the plaintiff proved, that he sent a sample suit to the defendants in the latter part of April, before the written contract was made, but he never sent a sample swatch. That the plaintiff received shortly after May 17, 1905, a letter from the defendant which stated:

"We wrote you last week for sample swatches of order for fall and winter goods but they have not arrived up to the present writing and we shall have to ask you to cancel the order."

That at the time this letter was received the goods had been purchased and cut up, and the suits were being manufactured to fill the order. That the goods had been purchased and cut up before May 3d, when the written order was executed. By the letter of the plaintiff to the defendants dated September 16th, it appears that the goods at that time had not been finished. There was no evidence as to how far the plaintiff had proceeded in the manufacture of the goods on May 17th, when this letter canceling the order was received, and there was no evidence to show how far the merchandise had been manufactured at the time this letter canceling the contract was received, or the damage that the plaintiff would have sustained had he then ceased to manufacture the clothing and had used the material for other purposes. The action is based upon the allegation of a complete performance of the contract, and plaintiff claimed the right to recover the contract price, based upon a tender of the manufactured articles to the defendants, as by that tender the title of the manufactured articles had vested in the defendants, so that the plaintiff was entitled to recover the contract price. But long before the articles had been manufactured the defendants had canceled the order, basing it upon the failure of the plaintiff to send samples of the goods out of which the clothing was to be manufactured, which the plaintiff admits that he agreed to send and which he had not sent as agreed.

It is quite clear, I think, upon this state of facts, that, while the plaintiff may have been entitled to recover the damages that he had sustained in consequence of the repudiation of the contract by the defendants, he was not entitled to recover the full contract price. After the contract had been canceled the plaintiff could not go on and complete the manufacture and recover from the defendants the full contract price. He was bound then to reduce the damage, and, while he may have been entitled to recover the damages that he had sustained up to the time of the cancellation of the contract by the defendants, he was not entitled to furnish the manufactured articles and recover the contract price. I do not find by the record that the plaintiff refused to accept this cancellation of the contract until September 16th, when plaintiff wrote to the defendants that he had not received any cancellation nor would he accept any now. But subsequently, in the letter of September 29, 1905, the defendants insisted on the cancellation of the contract by the letter of May 17, 1905. Certainly the plaintiff could not accept a cancellation of the order on May 17th without objection and then proceed to manufacture the goods as though no such cancellation had been given, and claim the full contract price of the manufactured goods when subsequently completed. In such a case the vendor is restricted to a recovery of the damages which had been incurred by him at the time of the cancellation or repudiation of the contract. Butler v. Butler, 77 N. Y. 472, 33 Am. Rep. 648; Dunham v. Hastings, etc., Co., 95 App. Div. 360, 88 N. Y. Supp. 835.

I also think that the finding of the jury that the plaintiff performed the contract, and that the goods as manufactured and tendered to the defendants complied with it, was against the weight of evidence. The

contract required that this clothing should be made of "all wool black Thibet." The defendants proved, and the plaintiff conceded, that the material used in the manufacture of this clothing that was tendered was partly made of cotton, and upon the face of the contract, therefore, it would not have complied with it. To meet this objection, there was evidence offered by persons connected with the woolen trade in New York that a contract calling for "all wool Thibet" clothing was complied with by furnishing cloth made partly of wool and the balance of cotton, if upon the surface of the cloth there was no cotton visible; that whether or not such material called for absolutely all wool depended upon the price paid for it, and what also would appear as the kind of trade in which the purchaser was engaged. As one witness testified:

"The term 'all wool' as applied to a woolen fabric depends altogether on the character of the goods, the price at which the goods may be sold, and the class of trade to which the goods are sold. Certain houses would have a very high standard of all wool. A house like Rogers-Peet or Brokaw would have what they call an 'all wool' fabric which would be a fabric that was positively all wool and would boil out, where a house like King or the Fourteenth Street store, people dealing in a lower grade of merchandise, would accept a piece of cloth that was carded or shoddy, a piece of cloth that you could not pull out a cotton thread out of the fabric. The term 'all wool' was applied to these different fabrics that I have testified to."

The plaintiff's examiner and sponger testified: That he examined the goods purchased by the plaintiff, and which was used in making up these garments. That an all wool piece of goods that would stand an absolute chemical test would cost from $2 to $3 a yard. That—

"the meaning of the term 'all wool' was understood to be the character of materials used in that particular grade of goods, at whatever price it was sold for. If it was sold for sixty cents a yard, the buyer of that merchandise would expect an all wool shoddy piece of goods. If it was 80 cents, 90 cents, or $1 or $1.10 or $1.20, the piece of cloth would be manipulated so that the cotton would not be seen. * * * Its universal application is goods with wool in it at all, that don't show cotton on mere inspection; that was considered all wool, and depended on the quality as to the price paid for it."

That the particular goods inspected by the witness were known in the trade at that time as "all wool Thibets."

This evidence was denied by the defendants, and it was shown that if such a custom existed it was not at all universal. This custom was one in the woolen trade, and I can find no evidence that it was used in the manufactured clothing trade. So far as appears, it was a local trade custom in New York, and not one which a dealer in Baltimore contracting for the purchase of manufactured clothing could be presumed to contract in reference to. There was nothing said in the contract as to the price of the cloth to be used in the manufacture of this clothing, and, as I read the evidence, it is that if certain dealers in New York who were known to deal in a superior quality of clothing had made such a contract the manufacturer would be bound to furnish goods that were all wool, while if a dealer in an inferior class of goods made such a contract they would be furnished with material that was not all wool but partly made of cotton. I do not think that a custom based upon such a trade usage can be said to be one which could be

applied to a contract made by a purchaser in another city so as to create a presumption that the parties contracted in relation to it, and that a party to a contract calling for clothing to be manufactured of all wool cloth would not be entitled to exact compliance with the contract as made according to the words used in their ordinary significance. It might be that, as between a vendor and vendee of woolen goods in New York, such a custom as was here proved would apply; but I can find no evidence to justify considering it as controlling a contract for manufactured clothing, especially where the vendee was not engaged in business in New York, and was not presumedly acquainted with the local custom that prevailed in the woolen trade in New York. It is quite true that the price that was to be paid for these goods would not justify a presumption that the parties had contracted for a high class of goods, but there is nothing in the case to show that the plaintiff could not have purchased goods which would strictly comply with the contract at a price that would enable him to manufacture the goods.

The judgment and order appealed from should, therefore, be reversed, and a new trial ordered, with costs to the appellants to abide the event. McLAUGHLIN, J., concurs. PATTERSON, P. J., and CLARKE and HOUGHTON, JJ., concur on first ground of reversal.